**Vito TANZI, Plaintiff,**

v.

**DEUTSCHE DAMPFSCHIFFAHRTS-GESELLSCHAFT HANSA and F. W. Hartman & Co., Inc., Defendants and Third Party Plaintiffs,**

v.

**INTERNATIONAL TERMINAL OPERATING CO., INC., Third Party Defendant.**

**No. 69 Civ. 386.**

United States District Court, S. D. New York.

Feb. 16, 1973.

Standard, Weisberg, Heckerling & Rosow, New York City, for plaintiff; Stanley Solomon, New York City, of counsel.

Nicholas A. D'Onofrio, New York City, for defendant Deutsche; Alexander Selkirk, Sag Harbor, N. Y., of counsel.

Alexander, Ash, Schwartz & Cohen, New York City for third party defendant; Albert V. Testa, New York City, of counsel.

## MEMORANDUM OPINION

ROBERT L. CARTER, District Judge.

Vito Tanzi, a sixty-six (66) year old longshoreman at the time of injury which is the basis for this litigation, seeks recovery on the grounds that his injury resulted from the unseaworthiness of the vessel on which he was working and negligence of the shipowner and operator. The defendant has impleaded the plaintiff's employer, a stevedoring company, in its third-party indemnity action.

At a trial on the merits held on December 18, 1972, the plaintiff presented two witnesses: the plaintiff himself and a doctor. At the close of plaintiff's case, motions for directed verdict were heard and decision reserved. Although defendants presented two witnesses, their testimony went to the existence of a contract between defendants and the extent of plaintiff's damages. Thus only the plaintiff's own testimony bears on the issue of liability.

At the close of defendants' case, both defendants renewed their motions for directed verdict. The Court granted the motion of the defendant shipowner. Inasmuch as the shipowner waived any indemnity over against the stevedore for counsel fees and other costs, its action over against the stevedore became moot and it was not necessary to rule on the stevedore's motion for directed verdict.

Vito Tanzi testified that on March 28, 1966 he was a longshoreman engaged in the unloading of general cargo from the M/V Werdenfels. At about 4 P.M. the plaintiff was working on the 'tween deck moving boxes from the ship's wings to the square of the hatch where they could

be loaded on palates and removed from the hold. To accomplish this task the plaintiff would position himself behind the carton to be moved and roll it end over end towards the square by pushing it with a hook. At the time of the accident the plaintiff was engaged in this operation and had moved a box about twenty (20) feet. One of the two metal bands (each about the width of a finger) which had been fastened around the box, broke apart resulting in lacerations to plaintiff's ring and index fingers. The plaintiff reported the injury to his hatch boss and was sent to a doctor. On cross examination the plaintiff admitted examining the straps in a cursory fashion and finding no obvious defect.

The plaintiff saw Dr. Tagliagambe on the day of the accident and the doctor cleaned, stitched and bandaged the wounds. The plaintiff remained out of work for two weeks and during that period he saw the doctor about six times for change of bandages. Since returning to work the plaintiff has lost no time due to the accident complained of, although he claims that his hand hurts "every once in a while" (which the plaintiff explained meant once every seven to ten days).

■ It has long been established that shipowners owe to seamen on board ship the duty to supply a seaworthy vessel (including equipment and appurtenances), The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). For an extended discussion of the development of the unseaworthiness doctrine, see Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). That duty has been extended to longshoremen "doing a seaman's work" such as discharging cargo. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 99, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). "The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." Mitchell v. Trawler Racer,

Inc., *supra.* In Gutierrez v. Waterman S. S. Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), the Court held that "things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for which they are to be used." *Id.* at 213, 83 S.Ct. at 1190. Thus, upon proper proof, a jury could find unseaworthiness as a result of the breaking of a metal strap on a box in general cargo which resulted in injury to a longshoreman. See Nobel v. Lehigh Valley R. R. Co., 388 F.2d 532 (2d Cir. 1968).

■ In this case however the plaintiff has not only not met his burden of proof but failed to even attempt to do so. A long line of decisions establish that the mere happening of an accident is not proof of either negligence or unseaworthiness. Mosley v. Cia. Mar. Adra, S. A., 314 F.2d 223, 228–229 (2d Cir. 1963). See also In re Marine Sulphur Queen, 460 F.2d 89, 99 (2d Cir. 1972), Nuzzo v. Rederi, A/S Wallenco, Stockholm, Sweden, 304 F.2d 506 (2d Cir. 1961).

In *Mosley,* the question was whether a hook used to dislodge scrap metal which obstructed a chute leading from the deck to the hold, was reasonably fit for its intended purposes. The Court said—

"Mosley failed to put in any proof that the hook was defective, worn, weakened, broken, improperly designed, insufficiently strong, excessively old, or in any other way unfitted or unsuited for its intended use." 314 F.2d at 228.

In *Nuzzo, supra,* a longshoreman fell in an empty space between the cargo and the bulkhead created by the particular positioning of vertical ribs along the bulkhead. The Court held that the mere existence of the space into which the longshoreman fell was insufficient, standing alone to warrant a finding of unseaworthiness. "[M]erely because of an accident aboard, the ship is not necessarily unseaworthy . . . [citing cases]." 304 F.2d at 511.

The plaintiff Tanzio has demonstrated only that a metal strap broke causing him injury. This fact alone is insufficient to allow the case to go to the jury on the theory of unseaworthiness or negligence. Plaintiff did not present the slightest hint of any evidence establishing the cause of breakage and whether that cause of breakage amounted to a breach of the duty to provide a reasonably fit cargo container. Furthermore there is no evidence to support the claim of negligence—there was no proof that the ship's officers or crew knew, or in the exercise of reasonable care, should have known of the defective strap.

Defendant shipowner's motion for a directed verdict is granted.

So ordered.