**Roy C. TALLEY, Jr., et al.**

v.

**John L. McLUCAS, Secretary of the Air Force, et al.**

**Civ. A. No. CA 3–7544–E.**

United States District Court,
N. D. Texas,
Dallas Division.

Oct. 4, 1973.

James A. Johnston, Johnston, Cloutman, Dixon, Dallas, Tex., for plaintiffs.

Frank D. McCown, U. S. Atty., Roger Allen, Asst. U. S. Atty., Dallas, Tex., for defendants.

## MEMORANDUM ORDER

MAHON, District Judge.

Plaintiffs are members of the Texas Air National Guard and the United States Air Force Reserve. They have brought suit seeking injunctive and declaratory relief. The focal point of the challenge herein asserted by the plaintiffs is the Air Force Regulation which provides:

> "Wigs or hair pieces will not be worn while on duty or in uniform except for cosmetic reasons to cover natural baldness or physical disfiguration. If under these conditions a wig or hair piece is worn, it will conform to Air Force standards." [1]

In addition to the above provision, Air Force Regulations require that a member's hair meet certain requirements relative to length. Each of the plaintiffs wears his hair at a length in excess of that allowed by the regulations; and each, for the purpose of complying with hair length requirements while participating in Reserve drills, wears a wig to weekend Reserve meetings.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (1970); it has been urged, by at least some of the plaintiffs, that an order to active duty would cause them to suffer a financial loss in excess of $10,000.00. Plaintiffs further assert that jurisdiction in this Court is properly premised upon 5 U.S.C. § 703 (1970) which relates to judicial review of final administrative decisions, and also upon 28 U.S. C. § 1361 (1970) in that the contention is made that this is an action in the nature of mandamus to compel an officer or employee of the United States to perform a

1. The substance of the wig regulation in question was provided by stipulation of the parties without formal citation. It appears to be part of Regulation AFM 35–10, dated December 1, 1972.

duty owed to each plaintiff. See Garmon v. Warner, 358 F.Supp. 206, 209 (W.D.N.C.1973). For the purpose of addressing itself to the issues herein raised, the Court assumes that its jurisdiction properly lies under 28 U.S.C. § 1331, and declines consideration of other sources of jurisdiction advanced by plaintiffs. See Friedman v. Froehlke, 470 F.2d 1351, 1352 n. 1 (1st Cir. 1972).

Plaintiffs, who engage in military activities one weekend each month and for a two-week period during summer, do not challenge the right of the armed services to regulate standards of appearance for members. They do contend, however, that inasmuch as they spend but a fraction of their time engaged in military pursuits, the regulation of the *means* by which they attain compliance with appearance requirements is an encroachment upon their rights as civilians to wear hair as they choose. It has been shown in the hearing conducted before this Court that plaintiffs have been threatened with being given unsatisfactory ratings with regard to their participation in monthly Reserve meetings by virtue of their having worn wigs. In at least one instance such a threat was carried out, and the individual was "redlined" as an unsatisfactory participant. Unsatisfactory ratings are recorded as unexcused absences, five of which during a twelve-month period will result in an individual being subject to call to active duty.

While this Court is inclined to believe that in recent times the significance of what might be considered incidental grooming matters has been exaggerated both by individuals as well as by institutions, it must note that in this Circuit, albeit by a seriously divided en banc court, the right of citizens to choose their personal mode of hair grooming has been recognized as a right accorded constitutional protections. Lansdale v. Tyler Junior College, 470 F.2d 659, 663 (5th Cir. 1972). The extent to which such right may be invaded, however, differs depending upon the circumstances wherein it is sought to be asserted.[2] That there is a distinction to be drawn with regard to the various contexts in which such a right might be invaded, and with regard to the extent to which an invasion may be permissible, was "emphasized" in *Lansdale*. 470 F.2d at 663.

Those Courts that have addressed themselves to the issue here under consideration are divided in their holdings. In support of the contentions herein urged by plaintiffs are Friedman v. Froehlke, 470 F.2d 1351 (1st Cir. 1972), Harris v. Kaine, 352 F.Supp. 769 (S.D. N.Y.1972), Garmon v. Warner, 358 F. Supp. 206 (W.D.N.C.1973) and Good v. Mauriello, 358 F.Supp. 1140 (W.D.N.Y. 1973); those authorities holding to the contrary, and upon which defendants herein rely, are Baugh v. Bennett, 350 F.Supp. 1248 (D.Ida.1972) and Comunale v. Mier, 355 F.Supp. 429 (W.D.Pa. 1973).[3] *Cf.*, Cossey v. Seamans, 344 F. Supp. 1368 (W.D.Okl.1972). While the above cases reflect that different results have been reached with regard to the "wig question," none of the authorities which have been brought to the Court's attention have rejected the basic premise that it is within the discretion and authority of the armed services to determine not only standards of grooming but also means by which such standards are met when such regulations relate to full-time military personnel. The point upon which the Courts have differed

2. *Compare* Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972), *with* Lansdale v. Tyler Junior College, 470 F.2d 659 (5th Cir. 1972).

3. In *Comunale* the Court observed: "We doubt the wisdom of a court interfering with the military in respect to its day to day operations. Where that interference would stop it is difficult to determine. I suppose the next step would deal with beards and the next with dress and the next with the hours one should be required to observe. It would present a difficult problem for the Air Force, once we started to make exceptions to the manual unless we were to rewrite the manual. I assume no court should entertain that thought, much less undertake the task." 355 F.Supp. at 431.

concerns the applicability of that general rule to members of reserve units who are allowed to spend the majority of their time in other than military environments. See Harris v. Kaine, *supra,* 352 F.Supp. at 778 n. 14; Friedman v. Froehlke, *supra,* 470 F.2d at 1353; and Garmon v. Warner, *supra,* 358 F.Supp. at 211.

In the circumstances herein presented, the Court is not overly impressed with the regulation in question, nor am I convinced of its necessity, particularly where, as here, the exigencies of war-time conditions are not present. As time passes, styles and customs change, and I do not believe that institutions should be either entirely unmindful of such facts or inflexible with regard to their recognition. Nevertheless, I cannot conclude that the right now in question and the possible invasion thereof, in the context in which they now appear, present an issue of such dimensions as would warrant this Court's impressing upon this matter its judgment to the exclusion of that of what I consider to be the proper military authorities. While there may be a Constitutional right to wear one's hair at the length he chooses, an encroachment upon that right may be permissible, depending upon the circumstances. Lansdale v. Tyler Junior College, *supra,* 470 F.2d at 663.

Almost all organizations have rules with which their members must comply. Enforcement of such rules may frequently lead to hardships for individuals, but that does not necessarily mean the federal courthouse is always the proper place to resolve conflicts which result—particularly where an alternative forum is available. Moreover, this Court does not consider the sentiment expressed in Comunale v. Mier, *supra,* to be without some merit. There the court said:

"The plaintiff has voluntarily joined a military organization which of necessity must have standards of dress and appearance. When he joined he agreed to comply with the regulations of the organization which pays him for the time he devotes to it. In our view he should not be heard to complain now that the regulations are an infringement of his liberty . . . . By accepting the benefits of his position he obligated himself to comply with the regulations." 355 F.Supp. at 431.[4]

In sum, I am in agreement with the statement of the Court of Appeals for the Seventh Circuit that,

"'the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty.' Burns v. Wilson, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). It cannot be seriously disputed that certain constitutional rights are and must be suspended or curtailed in the name of military discipline. Raderman v. Kaine, 411 F.2d 1102, 1104 (2d Cir. 1969), cert. den. 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447.

And, in matters properly within the area of military discretion, it is not for civil courts to judge whether the military has properly determined the balance between military needs and personal rights." Anderson v. Laird, 437 F.2d 912, 914 (7th Cir. 1971).

The relationship of the matters here in question, and of the regulations under attack, to the "demands of discipline and

4. *See also* Raderman v. Kaine, 411 F.2d 1102, 1104 (2nd Cir. 1969), *cert. dismissed,* 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447 (1969), where the following observation was made:
"However, plaintiff chose the six-year enlistment undoubtedly because it offered certain inducements. Not the least of these inducements was probably the ability to carry on various civilian activities and to avoid the raucous sounds of daily bugles and the regimented day thereafter—or even possibly foreign service. But these civilian activities were permissive, they were not constitutional rights. Plaintiff was still in the Army and subject to Army discipline. He was not a free agent."

duty," and possibly to health and safety, are not proper subjects for this Court's consideration. In Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L. Ed. 842 (1953), the Supreme Court, in considering individuals' rights relative to duty assignments, said:

> "We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectional handling of men. But judges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."

This Court does not feel that the length of one's hair in any way reflects the degree of loyalty and dedication an individual may feel for his country. Nor is the Court saying that those who volunteer for military service waive all rights "to challenge the military wisdom or the constitutional validity of military regulations." Garmon v. Warner, *supra*, 358 F.Supp. at 212. To the contrary, the Supreme Court has recently said, "[W]e neither hold nor imply that the conduct of the National Guard is always beyond judicial review or that there may not be accountability in a judicial forum for violations of law or for specific unlawful conduct by military personnel, whether by way of damages or injunctive relief." Gilligan v. Morgan, 413 U. S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407. The Court does hold, however, that the issue herein raised, in the circumstances heretofore shown, is not such that it is subject to this Court's review.

As was stated at the hearing conducted before this Court, regulations relative to hair and grooming have been changed even within the relatively short period of time in which the plaintiffs have been members of their respective reserve units. If further change is sought with respect to the regulations now in question, it should be done through military channels. Likewise, review of any alleged deprivation of rights as a result of the enforcement of the regulations now before the Court should be sought in the appropriate military tribunal.

Having determined that the matter now before this Court is not properly subject to its review, the Court herewith concludes that this cause of action should be dismissed.

It is so ordered.